| | |
|---|---|
| 1 | SEYFARTH SHAW LLP |
| | Christian J. Rowley (SBN 187293) |
| 2 | crowley@seyfarth.com |
| | Sean T. Strauss (SBN 245811) |
| 3 | sstrauss@seyfarth.com |
| | Galen P. Sallomi (SBN 306743) |
| 4 | gsallomi@seyfarth.com |
| | 560 Mission Street, 31st Floor |
| 5 | San Francisco, California 94105 |
| | Telephone: (415) 397-2823 |
| 6 | Facsimile: (415) 397-8549 |

Attorneys for Defendant
THE PERMANENTE MEDICAL GROUP, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIMI WEISS, | Case No. 3:23-cv-03490-RS |
| Plaintiff, | **DEFENDANT THE PERMANENTE MEDICAL GROUP, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| v. | |
| THE PERMANENTE MEDICAL GROUP, INC., | |
| Defendant. | |
| | Date: Thursday, December 7, 2023 |
| | Time: 1:30 p.m. |
| | Judge: Hon. Richard Seeborg |
| | Location: San Francisco Courthouse |
| | Courtroom 3 – 17th Floor |
| | 450 Golden Gate Avenue |
| | San Francisco, CA 94102 |

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ....................................................................................................................1

II. STATEMENT OF FACTS .......................................................................................................2

III. LEGAL STANDARD...............................................................................................................7

IV. ANALYSIS...............................................................................................................................8

    A. The First and Fifth Causes of Action for Disparate Treatment Must be Dismissed Because the FAC Does Not Allege Facts Establishing Differing Treatment of Similarly Situated Individuals or Discriminatory Intent......................................................8

    B. The Third and Seventh Causes of Action for Retaliation Must be Dismissed Because the FAC Has Not Alleged Facts Establishing a Causal Link Between Plaintiff's Request for a Religious Accommodation and Termination of Her Employment................................................................................................................11

V. CONCLUSION.......................................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................................ 7, 8

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................................ 7, 8

*Bush v. Mondelez Int'l, Inc.*,
  No. 16-CV-02460-RS, 2016 WL 5886886 (N.D. Cal. Oct. 7, 2016) ......................................... 8

*Campanelli v. Bockrath*,
  100 F.3d 1476 (9th Cir. 1996) .................................................................................................... 8

*United States ex rel. Chunie v. Ringrose*,
  788 F.2d 638 (9th Cir. 1986) ...................................................................................................... 8

*Clark v. Frank*,
  5 F.3d 535 (9th Cir. 1993) .......................................................................................................... 9

*Day v. Sears Holdings Corp.*,
  930 F. Supp. 2d 1146 (C.D. Cal. 2013) .................................................................................... 11

*E.E.O.C. v. Papin Enters., Inc.*,
  No. 6:07-cv-01548-JA-KRS, 2009 WL 2256023 (M.D. Fla. July 28, 2009) ............................. 5

*Freyd v. University of Or.*,
  990 F.3d 1211 (9th Cir. 2021) .................................................................................................... 9

*Gage v. Mayo Clinic*,
  No. CV-22-02091-PHX-SMM, 2023 WL 3230986 (D. Ariz. May 3, 2023) ........................... 10

*Klein v. Walt Disney Co.*,
  No. CV 13-01358 PSG, 2014 WL 12587046 (C.D. Cal. June 6, 2014) .................................. 11

*Lazy Y Ranch Ltd. v. Behrens*,
  546 F.3d 580 (9th Cir. 2008) ................................................................................................ 8, 12

*Lyons v. England*,
  307 F.3d 1092 (9th Cir. 2002) .................................................................................................... 9

*Marder v. Lopez*,
  450 F.3d 445 (9th Cir. 2006) ...................................................................................................... 8

*McDonnell Douglas Corp. v. Green*,
  411 U.S. 792, 802 (1973) ........................................................................................................... 9

*Moran v. Selig*,
   447 F.3d 748 (9th Cir. 2006) ............................................................................................... 9, 10

*Moss v. United States Secret Serv.*,
   572 F.3d 962 (9th Cir. 2009) ..................................................................................................... 8

*Ray v. Henderson*,
   217 F.3d 1234 (9th Cir. 2000) ................................................................................................. 11

*Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*,
   768 F.3d 938 (9th Cir. 2014) ..................................................................................................... 8

*Ricci v. DeStefano*,
   557 U.S. 557, 577 (2009) ........................................................................................................... 8

*Schlitt v. Abercrombie & Fitch Stores, Inc.*,
   No. 15-CV-01369-WHO, 2016 WL 2902233 (N.D. Cal. May 13, 2016) ................................. 9

*Stanley v. California*,
   No. 1:11-CV-00981-LJO, 2012 WL 6608574 (E.D. Cal. Dec. 18, 2012) ................................. 9

*Texas Dep't of Cmty. Affairs v. Burdine*,
   450 U.S. 248, 253 (1981) ........................................................................................................... 9

*United States v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003) ..................................................................................................... 8

*Varkonyi v. United Launch Alliance, LLC*,
   No. 2:23-CV-00359-SB-MRW, 2023 WL 4291649 (C.D. Cal. May 12, 2023) ...................... 10

*Vasquez v. County of Los Angeles*,
   349 F.3d 634 (9th Cir. 2003) ..................................................................................................... 9

*Wood v. City of San Diego*,
   678 F.3d 1075 (9th Cir. 2012) ............................................................................................... 8, 9

*Zakara v. Metals*,
   No. CV-21-01146-PHX-MTL, 2021 WL 5578876 (D. Ariz. Nov. 29, 2021) ......................... 10

**Federal Statutes**

Civil Rights Act of 1964 Title VII, 42 U.S.C. § 2000d, et seq. .................................................*passim*

**State Statutes**

California's Fair Housing and Employment Act, California Government Code, § 12940 .............. 1, 2

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ............................................................................. 1, 7, 8

**NOTICE OF MOTION AND MOTION**

**PLEASE TAKE NOTICE** that on Thursday, December 7, 2023, at 1:30 p.m., or as soon thereafter as counsel can be heard in the above-entitled Court, in Courtroom 3 - 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant THE PERMANENTE MEDICAL GROUP, INC. ("TPMG" or "Defendant"), will and hereby does move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the Third, Fifth, Seventh, and Eighth Causes of Action asserted against it by Plaintiff Mimi Weiss ("Plaintiff") in her First Amended Complaint for Damages and Injunctive Relief (the "FAC").

TPMG respectfully requests that the Court find Plaintiff fails to plausibly establish causes of action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. section 2000d, et seq. ("Title VII") or California's Fair Employment and Housing Act, California Government Code section 12940 ("FEHA") for disparate treatment or retaliation because the FAC does not advance specific facts demonstrating that (1) Plaintiff was treated differently than similarly situated persons outside her protected class; (2) TPMG had discriminatory intent when implementing the Kaiser Permanente COVID-19 Vaccination Policy; and (3) there was but-for causation between Plaintiff's submission of a request for religious accommodation from the Kaiser Permanente COVID-19 Vaccination Policy and Plaintiff's termination from employment by TPMG.

This motion is based on this notice of motion, the below memorandum of points and authorities, the Declaration of Sean T. Strauss and exhibits thereto filed herewith, all pleadings and documents on file in this case, and on such other and further oral and documentary evidence as may be presented at or before the hearing on this matter.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

In her FAC, Plaintiff advances claims under Title VII and FEHA alleging that her former employer, TPMG, discriminated against her when it terminated her employment because of her failure to comply with the Kaiser Permanente COVID-19 Vaccination Policy. Specifically, Plaintiff asserts that TPMG wrongfully denied her request for a religious exemption from its COVID-19 vaccine mandate and then "fired her because she requested a religious accommodation not to be vaccinated." FAC, ¶¶ 56,

1

108. For various reasons, the FAC fails to advance specific facts sufficient to plausibly state causes of action for disparate treatment or retaliation, requiring dismissal of the FAC's First, Third, Fifth, and Seventh Causes of Action.

First, Plaintiff's First and Fifth Causes of Action alleging disparate treatment under Title VII and FEHA must be dismissed because the FAC does not advance facts establishing (1) Plaintiff was treated differently than similarly situated persons outside her protected class, or (2) discriminatory intent by TPMG. Specifically, Plaintiff alleges membership in a protected class because she is a Christian Jew, but fails to advance any facts establishing that similarly situated employees of TPMG were treated more favorably by the Kaiser Permanente COVID-19 Vaccination Policy, the exemption request process, or that TPMG intended to discriminate against Christian Jews in general or Plaintiff in particular in the manner it implemented the policy. The FAC's failure to allege any such facts requires dismissal of its disparate treatment claims.

Second, the FAC's Third and Seventh Causes of Action – alleging retaliation under Title VII and FEHA – must be dismissed because Plaintiff fails to plausibly establish a causal connection between the protected activity alleged in the FAC and her termination. Plaintiff asserts she engaged in protected activity by "requesting religious accommodation not to receive the COVID-19 vaccine." FAC, ¶¶ 83, 129. Plaintiff was not, however, terminated for "requesting religious accommodation not to" be vaccinated. *Id.,* Instead, factual allegations advanced in the FAC and documents incorporated by reference in the FAC unambiguously establish Plaintiff was terminated "because of her refusal to obtain the vaccine" in violation of the Kaiser Permanente COVID-19 Vaccination Policy. *Id.*, ¶ 48. Because Plaintiff has not alleged facts establishing that engaging in the protected activity stated in the FAC caused any adverse employment action, Plaintiff's retaliation claims must be dismissed as well.

## II.   STATEMENT OF FACTS

Plaintiff alleges she worked for TPMG from August 2000 until 2015 and again from April 2017 until January 10, 2022. *See* FAC, ¶¶ 11, 12, 49.  Plaintiff asserts her position with TPMG was as a "Managerial Senior Consultant . . .  with the Regional Department, Health Engagement Consulting Services." *Id.,* ¶ 13. Plaintiff contends "[h]er job duties in this position were to manage a portfolio for a variety of health engagement consulting projects for TPMG, Nor Cal region." *Id.*

1    In response to the unprecedented public health emergency presented by the COVID-19 pandemic, and in anticipation of both federal and state regulations adopted shortly thereafter requiring COVID-19 vaccination for all employees of healthcare organizations, "[i]n August 2021, [TPMG] mandated all employees to be vaccinated for COVID-19[.]" FAC, ¶ 15. Plaintiff alleges that the Kaiser Permanente COVID-19 Vaccination Policy required all TPMG employes to provide proof of full vaccination or have an approved exemption by September 30, 2021, or be placed on unpaid leave for 60 days to come into compliance. *See id.,* ¶ 16. Plaintiff further asserts that, if compliance was not achieved during the 60-day unpaid leave of absence, employment would be terminated. *Id.*

Plaintiff contends she is a "Christian Jew" who has an alleged "sincerely held religious belief which prevents her from receiving the COVID-19 vaccine." FAC, ¶¶ 17, 18. Plaintiff alleges that, "[i]n or about late August 2021, [she] requested a religious accommodation to [the Kaiser Permanente] COVID-19 vaccine mandate." *Id.,* ¶ 24. Records show that the substantive portion of Plaintiff's August 26, 2021 exemption request stated in its entirety as follows:

> **My religion is as follows:** Christian Jew
>
> **The specific religious doctrine or teaching that prevents me from receiving a vaccine is:** My religious beliefs as a Christian Jew do not allow me to receive a Covid-19 vaccine: The Torah prohibits us from accepting foreign material into our bodies, Deuteronomy 14:1 prohibits needle wounds except for direct curative benefit. One must maintain his body and blood uncontaminated under Jewish law. I consider these COVID-19 vaccines to represent a defilement of my body, blood and soul and a rejection of the trust we must have as Jews in the natural healing powers bestowed upon the human body by our Creator. "Do you not know that your bodies are temples of the Holy Spirit, who is in you, whom you have received from God?"(1 Cor 6:19) The COVID-19 vaccines go directly against my belief that I am not to introduce foreign substances into my body temple that change how my Creator designed it. God created my body temple with an immune system, the mechanism to ward off disease, and there is need to inject a man-made substance in an effort to "improve" my God given abilities.
>
> **I have previously declined to receive other vaccines because of my religious belief, practice or observance?** No
>
> **If yes, please identify the other vaccines you have declined. If no, please explain what makes the COVID-19 vaccine different from the other vaccines you have not declined** It's not that the covid-19 vaccine is different for me. What's different is that during the last 18 months I've experienced extreme isolation and depression. I have sought comfort in God and in my faith to get me through this time. I've recommitted to my Jewish roots and earlier this year have accepted Jesus Christ as the Messiah.

Declaration of Sean T. Strauss in Support of TPMG's Motion to Dismiss Plaintiff's FAC ("Strauss Decl."), Ex. A at p. 1-2. On August 30, 2021, TPMG notified Plaintiff that it provisionally approved her religious exemption request from the Kaiser Permanente COVID-19 Vaccination Policy. *See* Strauss Decl., Ex. B at p. 2; FAC, ¶ 25. In that message TPMG specifically explained, "*This approval is provisional -- the decision to approve, and actions taken to accommodate the exemption, are subject to change based on frequently changing conditions, such as COVID-19 infection levels, and changes in public health guidance, legal requirements, and KP policies and practices.*" Strauss Decl., Ex. B at p. 2 (emphasis in original); *see* FAC, ¶ 25.

On September 21, 2021, TPMG informed Plaintiff that it was "engaging in additional review of exemption requests" because "[i]t has come to our attention that many employees have submitted similar or nearly identical exemption requests containing language that was taken verbatim from various free and paid template forms available on the internet."[1] Strauss Decl., Ex. C at p. 1; *see* FAC, ¶ 26. TPMG further explained that it also observed discussion "in internet chat groups in which Kaiser Permanente employees have been exchanging strategies for avoiding the vaccine mandate and distributing language and phrases that seem to be designed to create the appearance of a legitimate religious exemption instead of actually being based on a sincerely held religious belief." Strauss Decl., Ex. C at p. 1-2; *see* FAC, ¶ 26. For this reason, TPMG alerted Plaintiff that she might "be asked for additional information so that we can better understand the nature of your religious belief. You will receive an email if more detail is required." Strauss Decl., Ex. C at p. 2. Plaintiff was specifically instructed that her responses to any further requests for information "must be in your own words." *Id.*; *see* FAC, ¶ 26.

On October 21, 2021, Plaintiff was notified that, "After careful review of your request for an exemption under the COVID-19 Vaccination Policy, undertaken to ensure ongoing compliance with our responsibilities under public health requirements and KP policy, it has been determined that additional information is needed from you to further evaluate whether you have a sincerely held religious belief, practice, or observance that prevents you from receiving any COVID-19 vaccine." Strauss Decl., Ex. D,

---

[1] As to Plaintiff specifically, language in her August 26, 2021 exemption request closely mirrored phrasing from sources available on the internet providing text for submission in requests for religious exemption from COVID-19 vaccine mandates, such as https://ca.childrenshealthdefense.org/wp-content/uploads/Drafting-a-Religious-Exemption-Ltr-webfinal.pdf and https://rtlofholland.org/wp-content/uploads/2021/11/Sample-vaccine-exemption-language.pdf.

at pp. 1, 2; *see* FAC, ¶ 27. In this request for additional information, seven additional questions were posed regarding the alleged religious belief underlying Plaintiff's exemption request.[2] Strauss Decl., Ex. D at p. 3-4; *see* FAC, ¶ 27.

In Plaintiff's October 26, 2021 response to the request for additional information, she "refused to answer several of these questions regarding them as intrusive and a violation of privacy."[3] FAC, ¶ 27. Specifically, records establish that the entirety of the substantive portions of Plaintiff's response to the request for additional information regarding her request for a religious exemption from the Kaiser Permanente COVID-19 Vaccination Policy is as follows:

> **"If you have additional information you would like to submit in support of your request for exemption, please provide it here:"**
>
> Dear Human Resources,
>
> First, I want to thank you for accommodating my religious exemption. And, kindly I would like to reiterate, as a Christian Jew my body is a sovereign gift from God, and I am commanded by God in both the Torah and New Testament not to interfere with God's perfection. (Additional information for accommodating my religious exemption)
>
> Next, I'm compelled to share the following feedback….I do know inclusivity is foundational to Kaiser Permanente as messaged in our annual compliance trainings. I am saddened to note, the line of questioning in your email appears to be incongruent KP's commitment to inclusivity.

---

[2]  The Equal Employment Opportunity Commission ("EEOC") expressly provides that "if an employer has an objective basis for questioning either the religious nature or the sincerity of a particular belief, the employer would be justified in making a limited factual inquiry and seeking additional supporting information." *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws*, available at https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws. In connection with this inquiry "[t]he employer may ask for an explanation of how the employee's religious beliefs, practices, or observances conflict with the employer's COVID-19 vaccination requirement." *Id.* "If an employee's objection to a COVID-19 vaccination requirement is not religious in nature, or is not sincerely held, Title VII does not require the employer to provide an exception to the vaccination requirement as a religious accommodation." *Id; see also E.E.O.C. v. Papin Enters., Inc.,* No. 6:07-cv-01548-JA-KRS, 2009 WL 2256023, at *4 (M.D. Fla. July 28, 2009) ("The EEOC's own publications acknowledge that some inquiry into the sincerity of an employee's belief as well as into the religious nature of the belief is appropriate. Indeed, if the rule were otherwise, an employer would have to grant an accommodation any time an employee requested one, even if there were not a sincerely-held religious belief but instead only a purely personal or stylistic preference").

[3]  Notably, the EEOC cautions that, "An employee who fails to cooperate with an employer's reasonable requests for verification of the sincerity or religious nature of a professed belief, practice, or observance risks losing any subsequent claim that the employer improperly denied an accommodation." *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws*, available at https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws.

Finally, regarding your specific questions, I am unclear of the legal relevance (Title VII) to my already approved religious exemption. However, in my desire to be considerate of your request I did provide brief answers, see below. (Additional information for accommodating my religious exemption)

I trust this matter will be fully resolved upon receipt of this email.

Thank you again,

Mimi A Weiss

**ADDITIONAL QUESTIONS REGARDING YOUR REQUEST FOR RELIGIOUS EXEMPTION FROM COVID-19 VACCINATION (Maximum of Nine)**

Question:

What else besides the COVID-19 vaccine do you refuse to put in your body as a result of your religious belief?

Answer:

Any chemicals/substances that would be unclean as guidance from my Creator.

Question:

Have you put this belief into practice in any other areas of your life?

Answer:

Yes, my religious beliefs inform all meaning and purpose in my life.

Question:

Do you currently take or have you ever taken medications of any kind (over the counter or prescription) as an adult?

Answer:
My medical information and history is protected, and private, therefore I will not answer questions about medicines that I may or may not have taken.

Question:

Note: We are not asking you tell us what medications you take or why you take them - please do not share that information with us. If you answered yes:

Answer:

Question:

"When is the last time you took such medicine? Is the COVID-19 vaccine different from these medicines? If so, how?"

Answer:

6

>Once again, my medical information and history is protected, and private, therefore I will not answer questions about medicines I may or may not have taken. To draw any comparisons as asked above is not applicable.
>
>Question:
>
>Why does your religious belief prevent you from receiving the COVID-19 vaccination but not from taking other medications?
>
>Answer:
>
>I am not understanding the relevance of this question related to my sincerely held religious beliefs and accommodating my religious exemption. As previously stated, my religious beliefs do not allow me to alter the perfection of my God-given immune system.
>
>Question:
>
>Please resubmit your request for accommodation in your own words without using template or stock language from the internet or other sources.
>
>Answer:

Strauss Decl., Ex. E at p. 2-3.

On November 30, 2023, TPMG informed Plaintiff that her request for a religious exemption had been denied and that she "would be placed on unpaid leave from employment on December 5, 2021," unless she provided evidence of receipt of a COVID-19 vaccine. FAC, ¶ 36; *see* Strauss Decl., Ex. F, at p. 2-3. "On or about December 5, 2022, [TPMG] placed [Plaintiff] on unpaid administrative leave because of her refusal to obtain the vaccine." FAC, ¶ 48. On or about January 10, 2022, TPMG terminated Plaintiff's employment due to her failure to meet the requirements of the Kaiser Permanente COVID-19 Vaccination Policy. *See id.,* ¶ 49.

### III. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the claims stated in a complaint. *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint that offers mere "labels and conclusions" or "a formulaic recitation of the elements of

1  a cause of action will not do." *Id.*; *see also Moss v. United States Secret Serv.*, 572 F.3d 962, 969

2  (9th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678).

3        When reviewing a Rule 12(b)(6) motion, a court "must accept as true all factual allegations in

4  the complaint and draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Trust v.*

5  *United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). Nevertheless, a court

6  "need not assume the truth of legal conclusions cast in the form of factual allegations." *United States ex*

7  *rel. Chunie v. Ringrose*, 788 F.2d 638, 643 fn. 2 (9th Cir. 1986). That is, to defeat a Rule 12(b)(6)

8  motion, a complaint must provide "more than labels and conclusions, and a formulaic recitation of the

9  elements." *Twombly*, 550 U.S. at 555.

10       When evaluating a motion to dismiss, a court's review is generally limited to the contents of the

11 complaint. *See Campanelli v. Bockrath*, 100 F.3d 1476, 1479 (9th Cir. 1996). The Court may, however,

12 also consider documents attached to the complaint, documents incorporated by reference in the

13 complaint, or matters subject to judicial notice. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.

14 2003). Under the incorporation by reference doctrine, the Court may consider documents "on which the

15 complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to

16 the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6)

17 motion." *Bush v. Mondelez Int'l, Inc.*, No. 16-CV-02460-RS, 2016 WL 5886886, at *1 fn. 1 (N.D. Cal.

18 Oct. 7, 2016) (Seeborg, J.) (quoting *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)). When

19 evaluating the allegations of a complaint, the Court should disregard "allegations contradicting

20 documents that are referenced in the complaint or that are properly subject to judicial notice." *Lazy Y*

21 *Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

**IV.  ANALYSIS**

    **A.  The First and Fifth Causes of Action for Disparate Treatment Must be Dismissed Because the FAC Does Not Allege Facts Establishing Differing Treatment of Similarly Situated Individuals or Discriminatory Intent**

25       "Disparate treatment occurs 'where an employer has treated a particular person less favorably

26 than others because of a protected trait.'" *Wood v. City of San Diego*, 678 F.3d 1075, 1081 (9th Cir.

27 2012) (citing *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009)). "To establish a prima facie case of

28 disparate treatment under Title VII, a plaintiff must provide evidence that 'give[s] rise to an inference of

8

1   unlawful discrimination.'" *Lyons v. England*, 307 F.3d 1092, 1112 (9th Cir. 2002) (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). Disparate treatment claims follow the *McDonnell Douglas* framework in that a plaintiff bears the initial burden of showing: "(1) [s]he is a member of a protected class, (2) [s]he was performing his job in a satisfactory manner, (3) [s]he suffered an adverse employment decision, and (4) [s]he was treated differently than similarly situated persons outside [her] protected class." *Clark v. Frank*, 5 F.3d 535 (9th Cir. 1993) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Additionally, when a plaintiff challenges a facially neutral policy, he or she must allege facts establishing that the defendant had a discriminatory intent for taking the job-related action. *See Wood*, 678 F. 3d at 1081; *Freyd v. University of Or.*, 990 F.3d 1211, 1228 (9th Cir. 2021) ("disparate treatment theory does require proof of discriminatory intent."). The requirements to establish a disparate treatment claim under FEHA are identical. *See Schlitt v. Abercrombie & Fitch Stores, Inc.,* No. 15-CV-01369-WHO, 2016 WL 2902233, at *9 (N.D. Cal. May 13, 2016); *Stanley v. California,* No. 1:11-CV-00981-LJO, 2012 WL 6608574, at *6 (E.D. Cal. Dec. 18, 2012).

The FAC's First and Fifth Causes of Action asserting disparate treatment claims under Title VII and FEHA must be dismissed because Plaintiff fails to allege facts establishing (1) she was treated differently than similarly situated persons outside her protected class, or (2) discriminatory intent by TPMG. As to the first element, Plaintiff alleges that she "was a member of a protected class based on her religion as broadly defined to include both religious beliefs and practices. She is Christian Jew." FAC, ¶ 53. Plaintiff further asserts that TPMG "discriminated against Weiss in that it treated employees with other religious beliefs, such as Alicia Okoh, a Seventh-day Adventist more favorably, granting their exemption request, while denying Weiss' request." *Id.,* ¶ 57. These allegations do not, however, establish differing treatment of a "similarly situated" person outside Plaintiff's protected class.

To establish individuals are similarly situated, it is not enough for employees to be in similar employment positions; rather, the plaintiff and the comparator employee must be "similarly situated . . . in all material respects." *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006). Employees are thus similarly situated if they have "similar jobs and display similar conduct." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003). Here, while Plaintiff alleges that Ms. Okoh is a "co-worker" who was treated differently from Plaintiff when her exemption request was approved (FAC, ¶¶ 40, 41),

9

1    Plaintiff advances no facts establishing that Plaintiff and Ms. Okoh were similarly situated "in all
2    material respects." *Moran,* 447 F.3d at 755. Because the FAC advances no facts establishing that any
3    individual "similarly situated" to Plaintiff and outside her protected class was treated more favorably,
4    her disparate treatment claims necessarily fail. *See Zakara v. Metals*, No. CV-21-01146-PHX-MTL,
5    2021 WL 5578876, at *4 (D. Ariz. Nov. 29, 2021) (disparate treatment claim dismissed because
6    "Complaint is devoid of facts regarding their job requirements, conduct, or other information that might
7    support a finding that Plaintiff and these employees were similarly situated").[4]

8        The FAC also fails to allege facts establishing discriminatory intent. As stated in the FAC, the
9    Kaiser Permanente COVID-19 Vaccination Policy was facially neutral because it applied to "all
10   employees" who were "required to provide proof of fully vaccinated status or have an approved
11   exemption by September 30, 2021." FAC, ¶¶ 14, 15. Although the FAC advances the legal conclusions
12   that TPMG's termination of Plaintiff's employment was allegedly "substantially motivated by her
13   religion" and that it "discriminated against Weiss in that it treated employees with other religious
14   beliefs . . . more favorably" (FAC, ¶¶ 56, 57), nowhere does Plaintiff allege facts that could establish
15   that TPMG implemented the COVID-19 Vaccination Policy with the intent to discriminate against
16   Christian Jews in general or Plaintiff in particular. The FAC's failure to allege such facts is fatal to its
17   disparate treatment claims. *See, e.g., Varkonyi*, 2023 WL 4291649, at *3 ("without any allegations to
18   support the conclusion that Defendant exhibited religious bias, the FAC fails to state a claim for
19   unlawful termination on the basis of religion. Rather, the allegations in the FAC support the conclusion
20   that Plaintiff's termination was due to Plaintiff's failure to comply with Defendant's uniformly applied
21   vaccination policy."). The FAC's First and Fifth Causes of Action should accordingly be dismissed.

---

[4] *See also Varkonyi v. United Launch Alliance,, LLC*, No. 2:23-CV-00359-SB-MRW, 2023 WL 4291649, at *3 (C.D. Cal. May 12, 2023) (disparate treatment claim based on denial of a request for religious exemption from COVID-19 vaccine mandate dismissed because "Plaintiff does not provide any allegations that support the existence of direct evidence of discrimination and has not alleged that similarly situated non-Christian or nonreligious individuals were treated more favorably than he was."); *Gage v. Mayo Clinic,* No. CV-22-02091-PHX-SMM, 2023 WL 3230986, at *2 (D. Ariz. May 3, 2023) (Disparate treatment claim based on denial of a request for religious exemption from COVID-19 vaccine mandate dismissed because the complaint did not "allege facts showing that similarly situated individuals outside of her protected class were treated more favorably.").

**B.     The Third and Seventh Causes of Action for Retaliation Must be Dismissed Because the FAC Has Not Alleged Facts Establishing a Causal Link Between Plaintiff's Request for a Religious Accommodation and Termination of Her Employment**

Plaintiff's Third and Seventh Causes of Action for retaliation must be dismissed because the FAC fails to allege facts establishing a causal relationship between the protected activity alleged, namely "requesting religious accommodation not to receive the COVID-19 vaccine" (FAC, ¶¶ 83, 129), and termination of Plaintiff's employment. To state a prima facie claim for retaliation under Title VII, Plaintiff must allege facts establishing "(1) [s]he engaged in a protected activity; (2) [her] employer subjected [her] to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action." *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000); *see Day v. Sears Holdings Corp.*, 930 F. Supp. 2d 1146, 1176 (C.D. Cal. 2013). Stating a prima facie retaliation claim under FEHA requires facts establishing the same elements. *See Klein v. Walt Disney Co.*, No. CV 13-01358 PSG (DTBx), 2014 WL 12587046, at *5 (C.D. Cal. June 6, 2014).

Here, Plaintiff alleges that the protected activity at issue in her retaliation claims is "requesting religious accommodation not to receive the COVID-19 vaccine." FAC, ¶¶ 83, 129. The FAC then advances the legal conclusion that, "On information and belief, [TPMG] terminated Weiss's employment in retaliation for seeking religious accommodation." *Id.,* ¶ 87; *see id.,* ¶ 132. Actual facts alleged in the FAC and documents incorporated by reference therein, however, unequivocally demonstrate that is not the case.

Plaintiff alleges in her FAC that, in August 2021 TPMG "mandated all employees to be vaccinated for COVID-19" and pursuant to that policy, employees "were required to provide proof of fully vaccinated status or have an approved exemption[,]" or face termination. FAC, ¶¶ 15, 16. "In or about late August 2021, [Plaintiff] requested a religious accommodation to [TPMG's] COVID-19 vaccine mandate" and, in an email dated November 30, 2021, TPMG "rejected [Plaintiff's] religious accommodation request[.]" *Id.,* ¶¶ 24, 36; *see* Strauss Decl., Exs. A, F. "On or about December 5, 2022, [TPMG] placed [Plaintiff on unpaid administrative leave ***because of her refusal to obtain the vaccine***." *Id.,* ¶ 48 (emphasis added). "On or about January 10, 2022, [TPMG] terminated Plaintiff from her position, effective immediately." *Id.,* ¶ 49; *see also* Strauss Decl., Ex. F at pp. 1, 2 ["You are required to comply with the Kaiser Permanente COVID-19 Vaccine Policy by submitting proof of completed

11

COVID-19 vaccination . . . or obtaining an approved exemption. . . . Failure to meet the requirements of the Kaiser Permanente COVID-19 Vaccination Policy by January 7, 2022, will result in the termination of your employment on or after January 10, 2022."].

As these allegations and documents incorporated by reference in the FAC establish, Plaintiff employment by TPMG was not terminated because she "request[ed] religious accommodation" from the Kaiser Permanente COVID-19 Vaccination Policy. FAC, ¶¶ 83, 129. Instead, Plaintiff was terminated because she failed to either "provide proof of fully vaccinated status or have an approved exemption" by the specified deadline, in violation of that policy. *Id.,* ¶ 15; *see* Strauss Decl., Ex. F at pp. 1, 2. Although the FAC asserts that TPMG allegedly "terminated Weiss's employment in retaliation for seeking religious accommodation" (FAC, ¶¶ 87, 132), because that legal conclusion is specifically contradicted by both facts alleged in the FAC and documents incorporated by reference in the FAC, it should be disregard. *See Lazy Y Ranch Ltd.,* 546 F.3d at 588.

Plaintiff has not alleged and cannot allege facts establishing a causal link between "seeking religious accommodation" from the Kaiser Permanente COVID-19 Vaccination Policy and termination of her employment. FAC, ¶¶ 87, 132. That is because "seeking religious accommodation" had absolutely no causal link with Plaintiff's termination, both in-fact and according to facts advanced in the FAC. *Id.* The but-for cause of Plaintiff's termination was her failure to "provide proof of fully vaccinated status or have an approved exemption," in violation of the Kaiser Permanente COVID-19 Vaccination Policy. FAC, ¶ 15; *see* Strauss Decl., Ex. F, at pp. 1, 2 ["You are required to comply with the Kaiser Permanente COVID-19 Vaccine Policy by submitting proof of completed COVID-19 vaccination . . . or obtaining an approved exemption. . . .  Failure to meet the requirements of the Kaiser Permanente COVID-19 Vaccination Policy by January 7, 2022, will result in the termination of your employment on or after January 10, 2022."]. Because the FAC does not allege this was the protected activity at issue, Plaintiff's claims for retaliation under Title VII and FEHA must be dismissed.

/ / /

/ / /

/ / /

/ / /

| | |
|---|---|
| 1 | **V.   CONCLUSION** |
| 2 | For the foregoing reasons, TPMG respectfully requests that the FAC's First, Third, Fifth, and |
| 3 | Seventh Causes of Action be dismissed. |
| 4 | DATED: September 28, 2023                                       Respectfully submitted, |
| 5 |                                                                                         SEYFARTH SHAW LLP |
| 6 |                                                                                         By:   *Sean T. Strauss* |
| 7 |                                                                                                  Christian J. Rowley
Sean T. Strauss
Galen P. Sallomi |
| 8 | |
| 9 |                                                                                         Attorneys for Defendant
THE PERMANENTE MEDICAL GROUP, INC. |

13