1  SEYFARTH SHAW LLP
Christian J. Rowley (SBN 187293)
2  crowley@seyfarth.com
Sean T. Strauss (SBN 245811)
3  sstrauss@seyfarth.com
Galen P. Sallomi (SBN 306743)
4  gsallomi@seyfarth.com
560 Mission Street, 31st Floor
5  San Francisco, California 94105
Telephone:  (415) 397-2823
6  Facsimile:  (415) 397-8549

7  Attorneys for Defendant
THE PERMANENTE MEDICAL GROUP, INC.

8

9

10            UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12            SAN FRANCISCO DIVISION

13

14  MIMI WEISS,                          Case No. 3:23-cv-03490-RS

15            Plaintiff,                 **DEFENDANT THE PERMANENTE
                                         MEDICAL GROUP, INC.'S NOTICE OF
16      v.                               MOTION AND MOTION FOR
                                         JUDGMENT ON THE PLEADINGS;
17  THE PERMANENTE MEDICAL GROUP, INC.,  MEMORANDUM OF POINTS AND
                                         AUTHORITIES IN SUPPORT THEREOF**
18            Defendant.
                                         Date:       Thursday, May 30, 2024
19                                       Time:       1:30 p.m.
                                         Judge:      Hon. Richard Seeborg
20                                       Location:   San Francisco Courthouse
                                                     Courtroom 3 – 17th Floor
21                                                   450 Golden Gate Avenue
                                                     San Francisco, CA 94102
22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION ...................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...........................................................1

I.  INTRODUCTION ...................................................................................................1

II.  STATEMENT OF FACTS AND RELEVANT PROCEDURE........................................2

    A.  The Allegations of the FAC ...............................................................................2

    B.  Relevant Procedure ...........................................................................................7

III.  LEGAL STANDARD.............................................................................................8

IV.  ANALYSIS.............................................................................................................9

    A.  Judgment Should Be Entered on FAC's Second and Sixth Causes of Action
       Because Plaintiff Cannot Establish She Adequately Informed TPMG of Her
       Religious Beliefs or Any Conflict Between Those Beliefs and the Policy...................9

        1.  Plaintiff has the obligation to establish that she has a bona fide religious
           belief conflicting with the Policy and that she adequately informed TPMG
           regarding that conflict ..............................................................................9

        2.  Plaintiff's August 26, 2021 initial exemption request failed to establish a
           viable religious belief or a conflict with the Policy ...........................................10

        3.  Plaintiff failed to adequately inform TPMG of her religious beliefs and any
           conflict between them and the Policy because she refused to substantively
           respond to TPMG's request for additional information................................12

    B.  Plaintiff Has Not and Cannot State a Claim for "Religious Coercion –
       Harassment" and Judgment Should Thus Be Entered Against Plaintiff on
       the FAC's Fourth Cause of Action ...............................................................17

    C.  Because the FAC's Eighth Cause of Action is Derivative of the FAC's Other
       Claims, it Must Fail as Well ...............................................................20

    D.  Leave to Amend Should Be Denied as Futile ...........................................21

V.  CONCLUSION.......................................................................................22

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Federal Cases**

4

*Africa v. Pennsylvania*,
   662 F.2d 1025 (3d Cir. 1981)..................................................................... 11, 13, 14

5

6

*Alvarado v. City of San Jose*,
   94 F.3d 1223 (9th Cir. 1996) ............................................................................. 11

7

8

*Beck v. University of Wis. Bd. of Regents*,
   75 F.3d 1130 (7th Cir. 1996) ............................................................................. 15

9

10

*Birkes v. Mills*,
   No. 03:10-cv-00032-HU, 2011 WL 5117859 (D. Or. Sept. 28, 2011)........................... 11

11

*Borrello v. Respironics Cal., LLC*,
   No. 3:23-cv-00580-GPC-VET, 2023 WL 5986135 (S.D. Cal. Sept. 14, 2023) ............... 16

12

13

*Brooks v. City of San Mateo*,
   229 F.3d 917 (9th Cir. 2000) ............................................................................. 17

14

*Brooks v. Dunlop Mfg. Inc.*,
   No. 3:10-cv-04341-CRB, 2011 WL 6140912 (N.D. Cal. Dec. 9, 2011) ......................... 8

15

16

*Bush v. Mondelez Int'l, Inc.*,
   No. 3:16-cv-02460-RS, 2016 WL 5886886 (N.D. Cal. Oct. 7, 2016) (Seeborg, J.)......... 8

17

18

*Campanelli v. Bockrath*,
   100 F.3d 1476 (9th Cir. 1996) ............................................................................. 8

19

*Cary v. Carmichael*,
   908 F. Supp. 1334 (E.D. Va. 1995) ..................................................................... 17

20

21

*Chavez v. United States*,
   683 F.3d 1102 (9th Cir. 2012) ............................................................................. 8

22

*Craig v. M & O Agencies, Inc.*,
   496 F.3d 1047 (9th Cir. 2007) ........................................................................... 17

23

24

*Crawford v. Trader Joe's Co.*,
   No. 5:21-cv-01519-JGB-SHK, 2023 WL 3559331 (C.D. Cal. May 4, 2023) ................... 9

25

26

*Dockery v. Maryville Acad.*,
   379 F. Supp. 3d 704 (N.D. Ill. 2019) ................................................................... 16

27

*E.E.O.C. v. Papin Enters., Inc.*,
   No. 6:07-cv-01548-JA-KRS, 2009 WL 2256023 (M.D. Fla. July 28, 2009) ................. 17

28

ii

*Ellison v. Brady*,
    924 F.2d 872 (9th Cir. 1991) ................................................................................ 17

*Ellison v. Inova Health Care Servs.*,
    --- F.Supp.3d ----, No. 1:23-cv-00132-MSN-LRV, 2023 WL 6038016
    (E.D. Va. Sept. 14, 2023) .......................................................................... 11, 14

*Fallon v. Mercy Catholic Med.l Ctr. of Se. Penn.*,
    877 F.3d 487 (3d Cir. 2017) .................................................................................. 11

*Finkbeiner v. Geisinger Clinic*,
    623 F. Supp. 3d 458 (M.D. Pa. 2022) ................................................................... 12

*Gardner-Alfred v. Fed. Rsrv. Bank of N.Y.*,
    No. 1:22-cv-01585-LJL, 2023 WL 6214863 (S.D.N.Y. Sept. 25, 2023) ................ 10

*General Conference Corp. of Seventh–Day Adventists v. Seventh–Day Adventist
    Congregational Church*,
    887 F.2d 228 (9th Cir. 1989) ................................................................................... 8

*Goosby v. City of Los Angeles*,
    No. 2:21-cv-08234-SVW-DFM, 2021 WL 6496413 (C.D. Cal. Dec. 7, 2021) .......... 21

*Hinton v. Pacific Enters.*,
    5 F.3d 391 (9th Cir. 1993) ..................................................................................... 21

*Hittle v. City of Stockton*,
    No. 2:12-cv-00766-TLN-KJN, 2016 WL 1267703 (E.D. Cal. Mar. 31, 2016) ........... 20

*Lazy Y Ranch Ltd. v. Behrens*,
    546 F.3d 580 (9th Cir. 2008) ............................................................................ 8, 10

*Lopez v. Smith*,
    203 F.3d 1122 (9th Cir. 2000) ............................................................................... 21

*Maggio v. Oregon Health & Sci. Univ.*,
    No. 3:23-cv-00116-JR, 2024 WL 665991 (D. Or. Jan. 8, 2024) ............................. 20

*Meritor Sav. Bank, FSB v. Vinson*,
    477 U.S. 57 (1986) ................................................................................................. 17

*Mullen v. AstraZeneca Pharms., LP*,
    No. 2:23-cv-03903-JMY, 2023 WL 8651411 (E.D. Pa. Dec. 14, 2023) .................... 9

*Passarella v. Aspirus, Inc.*,
    No. 3:22-cv-00287-jdp, 2023 WL 2455681 (W.D. Wis. Mar. 10, 2023) .................. 11

*Peterson v. Hewlett-Packard Co.*,
    358 F.3d 599 (9th Cir. 2004) ................................................................................... 9

iii

*Quinones v. Donahoe*,
　No. 1:13-cv-01553-LJO-GSA, 2014 WL 2524429 (E.D. Cal. June 4, 2014) ................................ 18

*Rutman Wine Co. v. E. & J. Gallo Winery*,
　829 F.2d 729 (9th Cir. 1987) ................................................................................................. 21

*Samuels v. We've Only Just Begun Wedding Chapel, Inc.*,
　154 F. Supp. 3d 1087 (D. Nev. 2015) ...................................................................................... 19

*Santos v. County of Humboldt*,
　No. 1:22-cv-07485-RMI, 2023 WL 2600449 (N.D. Cal. Mar. 21, 2023) .................................... 16

*Sayegh v. John Enright, Inc.*,
　No. 2:10-cv-04794-JFW-JCG, 2010 WL 11531206 (C.D. Cal. Dec. 8, 2010) .............................. 21

*Smith v. W.W. Grainger, Inc.*,
　No. 5:18-cv-01405-JGB-SP, 2019 WL 1670942 (C.D. Cal. Feb. 5, 2019) ................................... 21

*Steffes v. Stepan Co.*,
　144 F.3d 1070 (7th Cir. 1998) ............................................................................................... 15

*Swanson v. Lilly USA, LLC*,
　No. 1:23-cv-00831-TWP-TAB, 2024 WL 125978 (S.D. Ind. Jan. 10, 2024) ............................... 19

*Taylor v. Adams & Assocs., Inc.*,
　No. 2:16-cv-00311-TLN-KJN, 2017 WL 4340276 (E.D. Cal. Sept. 29, 2017) ............................ 21

*Templeton v. Neodata Servs., Inc.*,
　162 F.3d 617 (10th Cir. 1998) ............................................................................................... 15

*Ulrich v. Lancaster Gen. Health*,
　5:22-cv-04945-SWR, 2023 WL 2939585 (E.D. Pa. Apr. 13, 2023) ............................................ 12

*United States v. Ritchie*,
　342 F.3d 903 (9th Cir. 2003) ................................................................................................... 8

*Van Gorp v. Eli Lily & Co.*,
　No. 1:22-cv-01650-TWP-MKK, 2023 WL 5486052 (S.D. Ind. Aug. 24, 2023) ........................... 19

*Venters v. City of Delphi*,
　123 F.3d 956 (7th Cir. 1997) ................................................................................................. 18

*Vinning-El v. Evans*,
　657 F.3d 591 (7th Cir. 2011) ................................................................................................. 15

*Voellger v. Dignity Health*,
　No. 19-CV-07089-RS, 2021 WL 6427680 (N.D. Cal. Dec. 13, 2021) (Seeborg, J.) ...................... 8

*Weiss v. Permanente Med. Grp., Inc.*,
　No. 3:23-cv-03490-RS, 2023 WL 8420974 (N.D. Cal. Dec. 4, 2023) (Seeborg, J.) ............... *passim*

iv

**State Cases**

*Trujillo v. North County Transit Dist.,*
    63 Cal. App. 4th 280 (1998) ........................................................................... 20

**Federal Statutes**

28 U.S.C. § 1407 ................................................................................................... 7

Civil Rights Act of 1964
    Title VII, 42 U.S.C. § 2000d, et seq. ..................................................... *passim*

**State Statutes**

Cal. Fair Employment and Housing Act,
    Cal. Gov. Code § 12940 ............................................................... 1, 2, 9, 20

**Rules**

Federal Rules of Civil Procedure
    Rule 12(c) ....................................................................................................... 8

**Other Authorities**

Equal Employment Opportunity Commission, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws,*
    available at https://www.eeoc.gov/wysk/what-you-should-know- about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws ................................................. 4, 5, 17

Equal Employment Opportunity Commission, *Compliance Manual on Religious Discrimination,*
    § 12-IV(A)(2) (Jan. 15, 2021),
    available at https://www.eeoc.gov/laws/guidance/section-12-religious-discrimination ................ 15

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on Thursday, May 30, 2024, at 1:30 p.m., or as soon thereafter as counsel can be heard, in Courtroom 3 - 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant THE PERMANENTE MEDICAL GROUP, INC. ("TPMG"), will and hereby does move pursuant to Federal Rule of Civil Procedure 12(c) for judgment on the pleadings as to the Second, Fourth, Sixth, and Eighth Causes of Action asserted against it by Plaintiff Mimi Weiss ("Plaintiff") in her First Amended Complaint for Damages and Injunctive Relief (the "FAC").

TPMG respectfully requests that the Court find that it is entitled to judgment on the pleadings, as a matter of law, as to the FAC's Second, Fourth, Sixth, and Eighth Causes of Action asserted under Title VII of the Civil Rights Act of 1964, 42 U.S.C. section 2000d, et seq. ("Title VII") or California's Fair Employment and Housing Act, California Government Code section 12940 ("FEHA"), because the FAC, documents incorporated by reference in the FAC, and documents subject to judicial notice establish that the FAC does not and cannot advance facts establishing all the elements of these claims.

This motion is based on this notice of motion, the below memorandum of points and authorities, the Request for Judicial Notice and Declaration of Sean T. Strauss and exhibits thereto filed herewith, all pleadings and documents on file in this case, and on such other and further oral and documentary evidence as may be presented at or before the hearing on this matter.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

In her FAC, Plaintiff advances claims under Title VII and FEHA alleging that her former employer, TPMG, discriminated against her when it terminated her employment due to her failure to comply with the Kaiser Permanente COVID-19 Vaccination Policy (the "Policy"). Specifically, Plaintiff alleges that TPMG wrongfully denied her request for a religious exemption from the Policy and thereafter wrongfully terminated her employment for noncompliance with the Policy. *See* FAC, ¶¶ 24-27, 36-37, 48-49. On December 4, 2023, the Court dismissed four of the eight claims advanced in the FAC. *See* CM/ECF #23; *Weiss v. Permanente Med. Grp., Inc.*, No. 3:23-cv-03490-RS, 2023 WL 8420974 (N.D. Cal. Dec. 4, 2023) (Seeborg, J.). For the following reasons, the Court should now enter judgment on the pleadings against Plaintiff on the FAC's four remaining claims.

1    As to the Complaint's Second and Sixth Causes of Action – alleging failure to accommodate

2  theories under Title VII and FEHA – Plaintiff has not and cannot allege she adequately informed TPMG

3  of her religious beliefs or a conflict between those beliefs and the Policy. Plaintiff's exemption request

4  and her response to TPMG's request for additional information – both of which are incorporated by

5  reference into the Complaint – show that Plaintiff's description of her alleged religious beliefs and their

6  conflict with the Policy consisted of (1) generalities, (2) arguments regarding the relevance of questions

7  posed, and (3) outright refusals to answer. Plaintiff's failure to adequately respond to TPMG's

8  reasonable requests for information regarding her religious beliefs and their alleged conflict with the

9  Policy - which an employer is permitted to seek - dooms the FAC's failure to accommodate claims.

10    The FAC's Fourth Cause of Action for "Religious Coercion – Harassment" must be dismissed

11  because it has not and cannot allege facts establishing either quid pro quo or hostile work environment

12  harassment under Title VII. To the extent the FAC's Fourth Cause of Action is construed as a claim for

13  quid pro quo religious harassment, it is not clear that such a claim is cognizable in the Ninth Circuit and,

14  even if it is, Plaintiff has not and cannot allege facts establishing the intent necessary to state such a

15  claim. If this claim is construed to assert hostile work environment religious harassment, the FAC makes

16  absolutely no attempt to allege facts establishing the elements of such a claim.

17    Finally, because the FAC's Eighth Cause of Action for failure to prevent discrimination and

18  harassment under FEHA is entirely dependent on a finding of liability regarding at least one of the

19  FAC's other claims, it must fail as well. Moreover, because dismissal of the FAC's claims is based on

20  unalterable facts established by documents incorporated by reference in the FAC, the Court should enter

21  judgment on the FAC with prejudice and without leave to amend.

22  **II.    STATEMENT OF FACTS AND RELEVANT PROCEDURE**

23    **A.    The Allegations of the FAC**

24    Plaintiff alleges she worked for TPMG from August 2000 until 2015 and again from April 2017

25  until January 10, 2022. *See* FAC, ¶¶ 11, 12, 49. Plaintiff asserts her last position with TPMG was as a

26  "Managerial Senior Consultant . . .  with the Regional Department, Health Engagement Consulting

27  Services." *Id.,* ¶ 13. Plaintiff contends "[h]er job duties in this position were to manage a portfolio for a

28  variety of health engagement consulting projects for TPMG, Nor Cal region." *Id.*

2

In response to the unprecedented public health emergency presented by the COVID-19 pandemic, and in anticipation of federal and state regulations adopted shortly thereafter requiring COVID-19 vaccination for all employees of healthcare organizations, "[i]n August 2021, [TPMG] mandated all employees to be vaccinated for COVID-19." FAC, ¶ 15. Plaintiff alleges that the Policy required all TPMG employes to provide proof of full vaccination or have an approved exemption by September 30, 2021, or be placed on unpaid leave for 60 days to come into compliance. *See id.,* ¶ 16. Plaintiff further asserts that, if compliance was not achieved during the 60-day unpaid leave of absence, employment would be terminated. *Id.*

Plaintiff contends she is a "Christian Jew" who has an alleged "sincerely held religious belief which prevents her from receiving the COVID-19 vaccine." FAC, ¶¶ 17, 18. Plaintiff alleges that, "[i]n or about late August 2021, [she] requested a religious accommodation to [the Kaiser Permanente] COVID-19 vaccine mandate." *Id.,* ¶ 24. Records show that the substantive portion of Plaintiff's August 26, 2021 exemption request stated as follows:

> **My religion is as follows:** Christian Jew
>
> **The specific religious doctrine or teaching that prevents me from receiving a vaccine is:** My religious beliefs as a Christian Jew do not allow me to receive a Covid-19 vaccine: The Torah prohibits us from accepting foreign material into our bodies, Deuteronomy 14:1 prohibits needle wounds except for direct curative benefit. One must maintain his body and blood uncontaminated under Jewish law. I consider these COVID-19 vaccines to represent a defilement of my body, blood and soul and a rejection of the trust we must have as Jews in the natural healing powers bestowed upon the human body by our Creator. "Do you not know that your bodies are temples of the Holy Spirit, who is in you, whom you have received from God?"(1 Cor 6:19) The COVID-19 vaccines go directly against my belief that I am not to introduce foreign substances into my body temple that change how my Creator designed it. God created my body temple with an immune system, the mechanism to ward off disease, and there is need [sic] to inject a man-made substance in an effort to "improve" my God given abilities.
>
> **I have previously declined to receive other vaccines because of my religious belief, practice or observance?** No
>
> **If yes, please identify the other vaccines you have declined. If no, please explain what makes the COVID-19 vaccine different from the other vaccines you have not declined.** It's not that the covid-19 vaccine is different for me. What's different is that during the last 18 months I've experienced extreme isolation and depression. I have sought comfort in God and in my faith to get me through this time. I've recommitted to my Jewish roots and earlier this year have accepted Jesus Christ as the Messiah.

Declaration of Sean T. Strauss in Support of TPMG's Motion for Judgment on the Pleadings ("Strauss Decl."), Ex. A at p. 1-2. On August 30, 2021, TPMG notified Plaintiff that it provisionally approved her religious exemption request from the Policy. *See* Strauss Decl., Ex. B at p. 2; Complaint, ¶ 25. In that message TPMG specifically explained, "*This approval is provisional -- the decision to approve, and actions taken to accommodate the exemption, are subject to change based on frequently changing conditions, such as COVID-19 infection levels, and changes in public health guidance, legal requirements, and KP policies and practices.*" Strauss Decl., Ex. B at p. 2 (emphasis in original).

On September 21, 2021, TPMG informed Plaintiff that it was "engaging in additional review of exemption requests" because "[i]t has come to our attention that many employees have submitted similar or nearly identical exemption requests containing language that was taken verbatim from various free and paid template forms available on the internet." Strauss Decl., Ex. C at p. 1; *see* FAC, ¶ 26. TPMG further explained that it also observed discussions "in internet chat groups in which Kaiser Permanente employees have been exchanging strategies for avoiding the vaccine mandate and distributing language and phrases that seem to be designed to create the appearance of a legitimate religious exemption instead of actually being based on a sincerely held religious belief." Strauss Decl., Ex. C at p. 1-2; *see* FAC, ¶ 26. For this reason, TPMG alerted Plaintiff that she might "be asked for additional information so that we can better understand the nature of your religious belief. You will receive an email if more detail is required."[1] Strauss Decl., Ex. C at p. 2. Plaintiff was specifically instructed that her responses to any further requests for information "must be in your own words." *Id.*; *see* FAC, ¶ 26.

On October 21, 2021, Plaintiff was notified that, "After careful review of your request for an exemption under the COVID-19 Vaccination Policy, undertaken to ensure ongoing compliance with our responsibilities under public health requirements and KP policy, it has been determined that additional

---

[1]    The Equal Employment Opportunity Commission ("EEOC") expressly provides that "if an employer has an objective basis for questioning either the religious nature or the sincerity of a particular belief, the employer would be justified in making a limited factual inquiry and seeking additional supporting information." EEOC, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws*, available at https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws. In connection with this inquiry "[t]he employer may ask for an explanation of how the employee's religious beliefs, practices, or observances conflict with the employer's COVID-19 vaccination requirement." *Id.* "If an employee's objection to a COVID-19 vaccination requirement is not religious in nature, or is not sincerely held, Title VII does not require the employer to provide an exception to the vaccination requirement as a religious accommodation." *Id.*

4

information is needed from you to further evaluate whether you have a sincerely held religious belief, practice, or observance that prevents you from receiving any COVID-19 vaccine." Strauss Decl., Ex. D, at pp. 1, 2; *see* FAC, ¶ 27. In this request for additional information, six additional questions were posed regarding the alleged religious beliefs underlying Plaintiff's exemption request. *Id.,* at p. 3-4.

In Plaintiff's October 26, 2021 response to TPMG's request for additional information, she "refused to answer several of these questions regarding them as intrusive and a violation of privacy."[2] FAC, ¶ 27. Specifically, records establish that the entirety of the substantive portions of Plaintiff's response to TPMG's request for additional information is as follows:

> **"If you have additional information you would like to submit in support of your request for exemption, please provide it here:"**
>
> Dear Human Resources,
>
> First, I want to thank you for accommodating my religious exemption. And, kindly I would like to reiterate, as a Christian Jew my body is a sovereign gift from God, and I am commanded by God in both the Torah and New Testament not to interfere with God's perfection. (Additional information for accommodating my religious exemption)
>
> Next, I'm compelled to share the following feedback….I do know inclusivity is foundational to Kaiser Permanente as messaged in our annual compliance trainings. I am saddened to note, the line of questioning in your email appears to be incongruent KP's commitment to inclusivity.
>
> Finally, regarding your specific questions, I am unclear of the legal relevance (Title VII) to my already approved religious exemption. However, in my desire to be considerate of your request I did provide brief answers, see below. (Additional information for accommodating my religious exemption)
>
> I trust this matter will be fully resolved upon receipt of this email.
>
> Thank you again,
>
> Mimi A Weiss
>
> **ADDITIONAL QUESTIONS REGARDING YOUR REQUEST FOR RELIGIOUS EXEMPTION FROM COVID-19 VACCINATION (Maximum of Nine)**

---

[2]    Notably, the EEOC specifically cautions that, "An employee who fails to cooperate with an employer's reasonable requests for verification of the sincerity or religious nature of a professed belief, practice, or observance risks losing any subsequent claim that the employer improperly denied an accommodation." EEOC, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws*, available at https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws.

Question:

What else besides the COVID-19 vaccine do you refuse to put in your body as a result of your religious belief?

Answer:

Any chemicals/substances that would be unclean as guidance from my Creator.

Question:

Have you put this belief into practice in any other areas of your life?

Answer:

Yes, my religious beliefs inform all meaning and purpose in my life.

Question:

Do you currently take or have you ever taken medications of any kind (over the counter or prescription) as an adult?

Answer:
My medical information and history is protected, and private, therefore I will not answer questions about medicines that I may or may not have taken.

Question:

Note: We are not asking you tell us what medications you take or why you take them - please do not share that information with us. If you answered yes:

Answer:

Question:

"When is the last time you took such medicine? Is the COVID-19 vaccine different from these medicines? If so, how?"

Answer:

Once again, my medical information and history is protected, and private, therefore I will not answer questions about medicines I may or may not have taken. To draw any comparisons as asked above is not applicable.

Question:

Why does your religious belief prevent you from receiving the COVID-19 vaccination but not from taking other medications?

Answer:

I am not understanding the relevance of this question related to my sincerely held religious beliefs and accommodating my religious exemption. As previously stated, my religious beliefs do not allow me to alter the perfection of my God-given immune system.

6

> Question:
> Please resubmit your request for accommodation in your own words without
> using template or stock language from the internet or other sources.
>
> Answer:

Strauss Decl., Ex. E at p. 2-3.

On November 30, 2023, TPMG informed Plaintiff that her request for a religious exemption had been denied and that she "would be placed on unpaid leave from employment on December 5, 2021," unless she provided evidence of receipt of a COVID-19 vaccine. FAC, ¶ 36; *see* Strauss Decl., Ex. F, at p. 2-3. "On or about December 5, 2022, [TPMG] placed [Plaintiff] on unpaid administrative leave because of her refusal to obtain the vaccine." FAC, ¶ 48. "On or about January 10, 2022, TPMG terminated [Plaintiff] from her position" due to noncompliance with the Policy. *Id.,* ¶ 49.

**B.    Relevant Procedure**

Plaintiff filed her Complaint in this Court on July 13, 2023. *See* CM/ECF #1. On August 29, 2023, TPMG filed a Motion to Dismiss that Complaint. *See* CM/ECF #13. Rather than respond to that Motion to Dismiss, on September 14, 2023, pursuant to Federal Rule of Civil Procedure ("FRCP") 15(a)(1)(B), Plaintiff filed her FAC.

On September 28, 2023, TPMG filed a Motion to Dismiss the FAC's First, Third, Fifth, and Seventh Causes of Action. *See* CM/ECF #16. On December 4, 2023, the Court granted that motion in its entirety and dismissed the those claims with leave to amend. *See* CM/ECF #23 at p. 7; *Weiss*, 2023 WL 8420974, at *4. On December 5, 2023, TPMG provided notice it filed a Motion to Transfer this Action to the Central District of California pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings (the "Motion to Transfer"). *See* CM/ECF #24. Pursuant to the Parties' stipulation, on December 20, 2023, the Court entered an Order (1) setting a deadline of January 18, 2024 for Plaintiff to file a Second Amended Complaint ("SAC") , and (2) aside from Plaintiff's filing of a SAC on or before January 18, 2024, staying the case until the further case management conference set for March 7, 2024, to provide the Judicial Panel on Multidistrict Litigation ("JPML") with sufficient time to evaluate and decide the Motion to Transfer. *See* CM/ECF #29.

Plaintiff did not file a SAC on or before the January 18, 2024 deadline set by the Court. On January 20, 2024, the JPML provided notice that it denied the Motion to Transfer. *See* CM/ECF #30.

1    Pursuant to the Parties' stipulation, on March 15, 2024, the Court entered an order setting a March 29,

2    2024 deadline for TPMG to further respond to the FAC. *See* CM/ECF #36. On March 29, 2024, TPMG

3    filed its Answer to the FAC. *See* CM/ECF #41.

4    **III.    LEGAL STANDARD**

5           After the pleadings are closed, but early enough not to delay trial, a party may move for

6    judgment on the pleadings. *See* FRCP 12(c). The analysis for FRCP 12(c) motions for judgment on the

7    pleadings is "substantially identical to [the] analysis under [FRCP] 12(b)(6)." *Chavez v. United States*,

8    683 F.3d 1102, 1108 (9th Cir. 2012). Under both rules, "a court must determine whether the facts

9    alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Brooks v. Dunlop Mfg.*

10   *Inc.*, No. 3:10-cv-04341-CRB, 2011 WL 6140912, at *3 (N.D. Cal. Dec. 9, 2011). "Judgment on the

11   pleadings is proper when there are no issues of material fact, and the moving party is entitled to

12   judgment as a matter of law." *General Conference Corp. of Seventh–Day Adventists v. Seventh–Day*

13   *Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989).

14          When evaluating a motion for judgment on the pleadings or a motion to dismiss, a court's review

15   is generally limited to the contents of the complaint. *See Campanelli v. Bockrath*, 100 F.3d 1476, 1479

16   (9th Cir. 1996). The Court may, however, also consider documents attached to the complaint, documents

17   incorporated by reference in the complaint, or matters subject to judicial notice. *See United States v.*

18   *Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *Voellger v. Dignity Health*, No. 19-CV-07089-RS, 2021 WL

19   6427680, at *3 fn. 2 (N.D. Cal. Dec. 13, 2021) (Seeborg, J.). Under the incorporation by reference

20   doctrine, the Court may consider documents "on which the complaint 'necessarily relies' if: (1) the

21   complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party

22   questions the authenticity of the copy attached to the 12(b)(6) motion." *Bush v. Mondelez Int'l, Inc.*,

23   No. 3:16-cv-02460-RS, 2016 WL 5886886, at *1 fn. 1 (N.D. Cal. Oct. 7, 2016) (Seeborg, J.) (quoting

24   *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)). When evaluating the allegations of a complaint,

25   the Court should disregard "allegations contradicting documents that are referenced in the complaint or

26   that are properly subject to judicial notice." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir.

27   2008).

28

## IV.    ANALYSIS

### A.    Judgment Should Be Entered on FAC's Second and Sixth Causes of Action Because Plaintiff Cannot Establish She Adequately Informed TPMG of Her Religious Beliefs or Any Conflict Between Those Beliefs and the Policy

Plaintiff's Second Cause of Action for Failure to Accommodate pursuant to Title VII and Sixth Cause of Action for Failure to Accommodate pursuant to FEHA each require that Plaintiff establish she has a bona fide religious belief, the practice of which conflicted with an employment duty, and that Plaintiff adequately informed TPMG of the nature of that belief and the conflict. As evident above, Plaintiff refused to provide responses to TPMG's requests for additional information regarding her religious exemption request and thus did not adequately inform TPMG of her religious beliefs or any conflict with the Policy. For that reason, the FAC's Second and Sixth Causes of Action must fail.

### 1.    Plaintiff has the obligation to establish that she has a bona fide religious belief conflicting with the Policy and that she adequately informed TPMG regarding that conflict

To establish a claim for religious discrimination under Title VII under a failure to accommodate theory (the FAC's Second Cause of Action), Plaintiff must establish that "(1) [s]he had a bona fide religious belief, the practice of which conflicts with an employment duty; (2) [s]he informed [her] employer of the belief and conflict; and (3) the employer discharged, threatened, or otherwise subjected [her] to an adverse employment action because of [her] inability to fulfill the job requirement." *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 606 (9th Cir. 2004) (citing *Heller v. EBB Auto Co.*, 8 F.3d 1433, 1438 (9th Cir. 1993)). The elements of a prima facie failure to accommodate claim under FEHA (the FAC's Sixth Cause of Action) are identical. *See Crawford v. Trader Joe's Co.*, No. 5:21-cv-01519-JGB-SHK, 2023 WL 3559331, at *8 (C.D. Cal. May 4, 2023).

In regard to the second element of a failure to accommodate claim, "It is the responsibility of the employee to inform their employer of a conflict arising between the employer's policies and the employee's professed religious beliefs." *Mullen v. AstraZeneca Pharms., LP*, No. 2:23-cv-03903-JMY, 2023 WL 8651411, at *3 (E.D. Pa. Dec. 14, 2023) (citing *Geraci v. Moody-Tottrup, Intern., Inc.*, 82 F.3d 578, 581 (3d Cir. 1996)). "This requires that the conflict, not merely the employee's desire for an accommodation, be actually conveyed to the employer so that the employer can determine what reasonable accommodation can be provided in accordance with its obligations under Title VII." *Id.,*

9

1  (citing *Miller v. Port Authority of New York & New Jersey*, 351 F. Supp. 3d 762, 778 (D.N.J. 2018)).

2  Although the FAC asserts Plaintiff notified TPMG "of her need for religious accommodation to the

3  COVID-19 vaccine" (FAC, ¶ 74) and that she "responded in good faith to [TPMG's] request for

4  additional information about her religious beliefs, and provided an explanation of her faith" (*id.*, ¶ 36),

5  Plaintiff's actual submissions to TPMG – documents incorporated by reference into the FAC – show

6  that Plaintiff repeatedly refused to provide the requested information necessary for TPMG to assess the

7  basis for Plaintiff's request for a religious exemption. Because demonstrably inaccurate allegations in

8  the FAC must be disregarded (*see Lazy Y Ranch Ltd.*, 546 F.3d at 588), Plaintiff has not and cannot

9  establish she adequately conveyed to TPMG the nature of her religious beliefs or the conflict between

10  those beliefs and the Policy, requiring dismissal of the FAC's failure to accommodate claims.

### 2. Plaintiff's August 26, 2021 initial exemption request failed to establish a viable religious belief or a conflict with the Policy

13  In her August 26, 2021 exemption request, which is incorporated by reference in Paragraph 24 of

14  the FAC, Plaintiff stated that the COVID-19 vaccine goes "directly against my belief that I am not to

15  introduce foreign substances into my body temple that change how my Creator designed it. God created

16  my body temple with an immune system, the mechanism to ward off disease, and there is need [sic] to

17  inject a man-made substance in an effort to 'improve' my God given abilities." Strauss Decl., Ex. A at

18  p. 1-2. Even so, Plaintiff admitted that she had never previously declined any other vaccine because of

19  her alleged religious beliefs and failed to explain what makes the COVID-19 vaccine different from

20  other vaccines she did not decline. *Id.* at p. 2. Given that Plaintiff specifically acknowledged she had

21  never previously declined a vaccine based on her alleged religious beliefs,[3] it is difficult to see how her

22  August 26, 2021 exemption request provided TPMG with a factual basis upon which to conclude

23  Plaintiff held a bona fide religious belief dictating that "God created my body temple with an immune

---

[3]    In addition, the language of Plaintiff's August 26, 2021 exemption request closely mirrored phrasing from sources available on the internet providing text to submit in connection with requests for religious exemption from COVID-19 vaccine, such as https://ca.childrenshealthdefense.org/wp-content/uploads/Drafting-a-Religious-Exemption-Ltr-webfinal.pdf and https://rtlofholland.org/wp-content/uploads/2021/11/Sample-vaccine-exemption-language.pdf. When submitting a request for a religious exemption, Plaintiff had an obligation to inform TPMG how her sincerely held personal religious beliefs conflicted with TPMG's COVID-19 vaccination policy, not merely parrot religious exemption requests available on the internet. *See Gardner-Alfred v. Fed. Rsrv. Bank of New York*, No. 1:22-cv-01585-LJL, 2023 WL 6214863, at *12, 13 (S.D.N.Y. Sept. 25, 2023).

10

system, the mechanism to ward off disease, and there is need to inject a man-made substance in an effort to 'improve' my God given abilities." *Id.,* at p. 2.

Furthermore, the purported "my body is a temple" belief against the COVID-19 vaccine that Plaintiff included in her exemption request is not religious, as a matter of law. Courts apply "the criteria identified in *Africa v. Pennsylvania*, 662 F.2d 1025 (3d Cir. 1981), and adopted by the Ninth Circuit in *Alvarado v. City of San Jose*, 94 F.3d 1223, 1229-30 (9th Cir. 1996) . . . in determining whether a set of beliefs is religious." *Birkes v. Mills*, No. 03:10-cv-00032-HU, 2011 WL 5117859, at *3 (D. Or. Sept. 28, 2011). *Africa*'s test focuses on three criteria to assist courts in evaluating whether a set of beliefs is religious:

> First, a religion addresses fundamental and ultimate questions having to do with deep and imponderable matters. Second, a religion is comprehensive in nature; it consists of a belief-system as opposed to an isolated teaching. Third, a religion often can be recognized by the presence of certain formal and external signs.

*Africa*, 662 F.2d at 1032. Courts assessing nearly identical "body temple" beliefs stated in requests for religious exemption from vaccine mandates have repeatedly determined that such beliefs are not "religious" for purposes of claims under Title VII.

For example, in *Fallon v. Mercy Catholic Medical Center of Southeast Pennsylvania*, 877 F.3d 487 (3d Cir. 2017), the Third Circuit evaluated dismissal of religious discrimination claims arising from plaintiff's termination following refusal to receive the flu vaccine. In that case, Plaintiff's belief was that "'one should not harm their [sic] own body and strongly believes that the flu vaccine may do more harm than good.' He concludes that if he yielded to coercion and consented to the hospital mandatory policy, he would violate his conscience as to what is right and what is wrong." *Id.,* at p. 492. The Third Circuit held that dismissal of that plaintiff's religious discrimination claim was appropriate because the plaintiff's purported religious belief failed to meet the first and third *Africa* factors.

District courts have reached similar conclusions when evaluating requests for exemption from COVID-19 vaccine mandates. In *Ellison v. Inova Health Care Services*, --- F.Supp.3d ----, No. 1:23-cv-00132-MSN-LRV, 2023 WL 6038016, at *5-6 (E.D. Va. Sept. 14, 2023), the court concluded three different "Body-as-a-Temple" religious exemption requests from a COVID-19 vaccine mandate were properly dismissed because such requests failed to qualify as religious. In *Passarella v. Aspirus, Inc.*,

11

No. 3:22-cv-00287-jdp, 2023 WL 2455681, at *5 (W.D. Wis. Mar. 10, 2023), the court concluded that religious discrimination claims related to the plaintiff's assertion of a religious "right to bodily integrity" stating that "her body is a temple of the Holy Spirit" were appropriately dismissed because plaintiff did "not articulate any religious belief that would prevent her from taking the vaccine if she believed it was safe." In *Finkbeiner v. Geisinger Clinic*, 623 F. Supp. 3d 458, 463 (M.D. Pa. 2022) and *Ulrich v. Lancaster General Health*, No. 5:22-cv-04945-SWR, 2023 WL 2939585, at *1 (E.D. Pa. Apr. 13, 2023), courts found religious discrimination claims arising from mandatory COVID-19 testing were properly dismissed when the plaintiffs based their claims on the beliefs that "I have faith in my own immune system and the ability for my own body to heal itself" or "my body is a temple of the Holy Spirit and any medical interventions which I consider must comport with that fundamental religious belief."

Plaintiff's exemption request is remarkably analogous to those in the above cases and thus similarly fails to establish a viable religious belief or conflict with the Policy. In her exemption request, Plaintiff did not establish her purported belief was comprehensive in nature, as she specifically acknowledged she had never previously declined to receive any other vaccine because of her alleged religious beliefs. *See* Strauss Decl., Ex. A at p. 2. Plaintiff asserted that the COVID-19 vaccines (and apparently only the COVID-19 vaccines, not any other vaccine or substance) "go directly against my belief that I am not to introduce foreign substances into my body temple[.]" *Id.* Moreover, Plaintiff's exemption request gave TPMG absolutely no basis upon which to ascertain whether Plaintiff's alleged objection to the COVID-19 vaccine was part of a belief system, as opposed to an isolated teaching. *See id.* It thus cannot be said that Plaintiff's August 26, 2021 exemption request adequately informed TPMG of her religious beliefs and the nature of the conflict between those beliefs and the Policy.

### 3. Plaintiff failed to adequately inform TPMG of her religious beliefs and any conflict between them and the Policy because she refused to substantively respond to TPMG's request for additional information

Because Plaintiff's August 26, 2021 initial exemption request did not provide TPMG with sufficient information to make a determination regarding Plaintiff's request for a religious exemption from the Policy, TPMG concluded that "additional information [was] needed from [Plaintiff] to further evaluate whether [she has] a sincerely held religious belief, practice, or observance that prevents [her] from receiving any COVID-19 vaccine." Strauss Decl., Ex. D, at pp. 1, 2; *see* FAC, ¶ 27. On October

21, 2021, TPMG accordingly sent Plaintiff an email posing six questions to clarify the scope of her objection to the Policy and assist TPMG in ascertaining whether the alleged beliefs underlying Plaintiff's exemption request "address[ ] fundamental and ultimate questions having to do with deep and imponderable matters[,]" "consist[ ] of a belief-system as opposed to an isolated teaching[,]" and "can be recognized by the presence of certain formal and external signs." *Africa*, 662 F.2d at 1032; *see* CM/ECF #23 at p. 6; *Weiss,* 2023 WL 8420974, at *3 ("TPMG did seemingly give Weiss a supplementary process to provide more information about her request by following up with her and seeking additional answers"); FAC, ¶¶ 27-28; Strauss Dec. Ex. D.[4]

Plaintiff specifically refused to engage in the process. Instead of responding "in good faith to [TPMG's] request for additional information about her religious beliefs" (FAC, ¶ 36), Plaintiff submitted responses to the follow-up questions consisting of (1) generalities, (2) arguments regarding the relevance of questions, and (3) outright refusals to answer. *See* Strauss Decl., Ex. E; FAC, ¶ 27 (Plaintiff "refused to answer several of these questions regarding them as intrusive and a violation of privacy."). For example, Plaintiff's initial exemption asserted,

> I am not to introduce foreign substances into my body temple that change how my Creator designed it. God created my body temple with an immune system, the mechanism to ward off disease, and there is need [sic] to inject a man-made substance in an effort to "improve" my God given abilities.

Strauss Decl., Ex A at p. 2. To evaluate whether this statement in Plaintiff's initial exemption request constituted a belief system as opposed to an isolated teaching, TPMG asked a yes or no question about whether Plaintiff had taken any other medications as an adult and a second question asking, if so, how

---

[4]    In the FAC, Plaintiff asserts that the process adopted by TPMG to evaluate requests for religious exemption from the Policy was "arbitrary and capricious, as it did not involve any direct human contact with individual applicants[.]" FAC, ¶ 29. Plaintiff fails, however, to advance any legal authority establishing that "direct human contact" is a prerequisite to having a legally sufficient process for reviewing requests for a religious exemption from a vaccination requirement. Plaintiff also fails to explain how "direct human contact" regarding every exemption request would even be possible given the thousands of exemption requests TPMG received, requirements and deadlines imposed by state and federal regulation, and the other exigencies of the COVID-19 pandemic in the second half of 2021. Notably, the EEOC mentions no such requirement in the significant COVID guidance it provided to employers from 2020 to 2024. Creation of new law now by *post hoc* imposing such a requirement would be an incredible shock to employers throughout the country who utilized (and continue to utilize) a similar written process for evaluating requests for religious exemptions from COVID-19 vaccination mandates. Regardless, as the Court previously noted, TPMG was "under no obligation to continue the conversation with [Plaintiff] after she had been given and declined an opportunity to do so." CM/ECF #26 at p. 6; *Weiss,* 2023 WL 8420974, at *3.

those medications differed from the COVID-19 vaccine. Plaintiff refused to answer either question, asserting "my medical information and history is protected, and private, therefore I will not answer questions about medicines I may or may not have taken." *Id.*, Ex. E at p. 2.

TPMG also asked Plaintiff why her alleged religious belief that "I am not to introduce foreign substances into my body temple that change how my Creator designed it" prevents her "from receiving the COVID vaccination but not from taking other medications." Strauss Decl., Ex. A at p. 2, Ex. D at p. 4. Plaintiff again refused to provide a substantive answer, stating "I am not understanding the relevance of this questions related to my sincerely held religious beliefs and accommodating my religious exemption. As previously stated, my religious beliefs do not allow me to alter the perfection of my God-given immune system." *Id.,* Ex. E at p. 3. As other medications certainly have the capacity to alter the immune system, this question was directly relevant to determining whether Plaintiff's asserted objection to receipt of a COVID-19 vaccine consisted of a religious "belief-system . . . recognized by the presence of certain formal and external signs." *Africa*, 662 F.2d at 1032.

Similarly, because Plaintiff's initial exemption request appears to assert that only the COVID-19 vaccines, not any other vaccine or substance, goes "directly against [Plaintiff's] belief that [she is] not to introduce foreign substances into [her] body temple" (Strauss Decl., Ex A at p. 2), TPMG asked (1) what else besides the COVID-19 vaccine Plaintiff refused to put into her body as a result of her religious beliefs, and (2) has Plaintiff put this belief into practice in any other areas of her life (*see id.*, Ex. D at p. 3). Plaintiff responded generically and non-specifically that she refuses, "Any chemicals/substances that would be unclean as guidance from my Creator" and, "Yes, my religious beliefs inform all meaning and purpose in my life." *Id.*, Ex. E at p. 2. An assertion like this where Plaintiff is able to unilaterally and generically determine an employment objection flaunts guidance "from my Creator" does not qualify as religious because it amounts "to the type of 'blanket privilege' that undermines our system of ordered liberty [and]. . . if taken to its logical extreme . . .would serve as a 'limitless excuse for avoiding all . . . obligations.'" *Ellison*, 2023 WL 6038016, at *5 (quoting *Africa*, 662 F.2d at 1031; *Finkbeiner*, 623 F. Supp. 3d at 465)).

Finally, and perhaps most significantly, because Plaintiff's initial exemption request closely mirrored phrasing from sources available on the internet providing text to submit in connection with

14

requests for religious exemption from COVID 19 vaccine mandates, TPMG asked Plaintiff to, "Please resubmit your request for accommodation in your own words without using template or stock language from the internet or other sources." Strauss Decl., Ex. D at p. 3. Plaintiff provided absolutely no response to this question at all. *See id.*, Ex. E at p. 3. Because Plaintiff failed to meaningfully participate in the exemption review process, she did not adequately inform her employer of any conflict between her alleged religious beliefs and the Policy. Her failure to accommodate claims must accordingly be dismissed as a matter of law.[5]

Although Plaintiff now asserts these supplemental questions were improper because TPMG purportedly "lacked an objective basis to question the sincerity of [Plaintiff's] belief" (FAC, ¶ 44), the follow-up questions were absolutely necessary given the significant issues with Plaintiff's original exemption request (*see* Strauss Decl., Ex. A) and problems TPMG was seeing with requests for religions exemptions in general (*see id.*, Ex. C).[6] In fact, Plaintiff's admission in her initial exemption request that she had never previously declined a vaccine based on her religious beliefs but was now seeking an exemption from the COVID-19 vaccine based on the alleged religious belief that she was prohibited

---

[5]    *See Steffes v. Stepan Co.,* 144 F.3d 1070, 1073 (7th Cir. 1998) (affirming that employer was not liable failure to provide accommodation and noting that when the employee "fail[s] to hold up her end of the interactive process by clarifying the extent of her medical restrictions, [the employer] cannot be held liable for failing to provide reasonable accommodations."); *Templeton v. Neodata Servs., Inc.*, 162 F.3d 617, 619 (10th Cir. 1998) (holding that employee's failure to provide medical information, which was requested by employer and necessary to the interactive process, defeated employee's claim that employer failed to provide reasonable accommodation); *Beck v. University of Wis. Bd. of Regents*, 75 F.3d 1130, 1135-36 (7th Cir. 1996) (affirming summary judgment in favor of employer and ruling that "[w]here the missing information is of the type that can only be provided by one of the parties, failure to provide the information may be the cause of the breakdown and the party withholding the information may be found to have obstructed the process.")

[6]    *See* EEOC, *Compliance Manual on Religious Discrimination*, § 12-IV(A)(2) (Jan. 15, 2021) ("Where the accommodation request itself does not provide enough information to enable the employer to make a determination, and the employer has a bona fide doubt as to the basis for the accommodation request, it is entitled to make a limited inquiry into the facts and circumstances of the employee's claim that the belief or practice at issue is religious and sincerely held, and that the belief or practice gives rise to the need for the accommodation."), citing *Adeyeye v. Heartland Sweeteners*, LLC, 721 F.3d 444, 451 (7th Cir. 2013) ("If the managers who considered the request had questions about whether the request was religious, nothing would have prevented them from asking [the employee] to explain a little more about the nature of his request . . . . [The] law leaves ample room for dialogue on these matters."); *Vinning-El v. Evans*, 657 F.3d 591, 594 (7th Cir. 2011) (noting, in a prison religious accommodation case, that where asserted religious belief differed significantly "from the orthodox beliefs of [prisoner's] faith, . . . [s]uch a belief isn't impossible, but it is sufficiently rare that a prison's chaplain could be skeptical and conduct an inquiry to determine whether the claim was nonetheless sincere"), available at https://www.eeoc.gov/laws/guidance/section-12-religious-discrimination.

15

from "needle wounds except for direct curative benefit" (Strauss Decl., Ex. A at p. 1) was enough, even in the absence of the other issues with Plaintiff's exemption request discussed above, to justify further inquiry into the bases for Plaintiff's exemption request.[7]

Plaintiff also contends that the questions posed by TPMG were improper because they were "intrusive and a violation of privacy" and "appeared to be intended to trap applicants into providing answers which would appear to conflict with a sincerely-held religious belief." FAC, ¶¶ 27, 28. Plaintiff's assertion that these questions were an invasion of privacy borders on frivolous, especially in light of her affirmative obligation to inform TPMG of the factual bases for her objection to receipt of a COVID vaccination.[8] The FAC's assertion that the supplemental questions were improper because they were purportedly intended "to trap applicants" fails after even a cursory review of the questions, and is even more dubious after comparing these questions to those posed by the federal government itself. *Compare* Strauss Decl., Ex. D *with* Strauss Decl., Exs. G-J.[9] Plaintiff has not and cannot point to anything in these questions that was "intended to trap applicants" rather than simply to obtain additional facts necessary fully evaluate whether a request for an exemption from the Policy was based on a bona fide religious belief.

---

[7]    *See, e.g., Dockery v. Maryville Acad.*, 379 F. Supp. 3d 704, 718-19 (N.D. Ill. 2019) (employer had objective basis for questioning whether employee sincerely believed that it was against his religion to work during Sabbath, where employee previously was willing to do so, employee himself testified that he told employer he could not work on Friday and Saturdays "because he was 'used to' and 'accustomed to' having those days off 'to be able to worship with [his] family and do different things with [his] family,'" and employee failed to explain or provide more information to employer as requested).

[8]    *See Borrello v. Respironics Cal., LLC*, No. 3:23-cv-00580-GPC-VET, 2023 WL 5986135, at *9 (S.D. Cal. Sept. 14, 2023) (dismissing invasion of privacy claim related to COVID-19 vaccination mandate); *Santos v. County of Humboldt*, No. 1:22-cv-07485-RMI, 2023 WL 2600449, at *3 fn. 5 (N.D. Cal. Mar. 21, 2023) (right to privacy over medical history waived if that information placed at issue in a lawsuit or other matter) (citing cases).

[9]    For example, one of the questions Plaintiff asserts was purportedly intended to "trap applicants" (FAC, ¶28) asked, "When is the last time you took such medicine?  Is the COVID-19 vaccine different from these medicines?  If so, how?" Strauss Decl., Ex. D at p. 4. In forms for requesting an exemption from their COVID-19 Vaccination requirement, the United States Departments of Homeland Security, Commerce, and Agriculture ask, "If there are any other medicines or products that you do not use because of the religious belief underlying your objection, please identify them" and "If you do not have a religious objection to the use of all vaccines, please explain why your objection is limited to particular vaccines." Strauss Decl., Exs. G-I. Even the EEOC asks its own employees seeking a religious exemption from its COVID vaccination requirement to, "Please describe the nature of your sincerely held religious beliefs or religious practice or observance that conflict with the EEOC requirement, policy, or practice identified above." *Id.,* Ex. J. The questions posed by the federal government to its own employees are comparable to, and arguably more intrusive than, those TPMG posed to Plaintiff.

The EEOC specifically cautions that "[a]n employee who fails to cooperate with an employer's reasonable requests for verification of the sincerity or religious nature of a professed belief, practice, or observance risks losing any subsequent claim that the employer improperly denied an accommodation." *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws*, available at https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws. Plaintiff's express and explicit refusal to cooperate with TPMG's reasonable request for supplemental information regarding the facts underlying her request for a religious exemption from the Policy provides a legal basis for dismissal of any subsequent claim that Plaintiff's exemption request was improperly denied.[10] This issue is appropriately decided on the pleadings because documents incorporated by reference in the FAC, which can never change, unambiguously provide the factual basis for dismissal. Plaintiff's inability to establish she adequately informed TPMG of her religious beliefs and any conflict between them and the Policy accordingly dictates judgment on the pleadings be entered as to the FAC's Second and Sixth Causes of Action.

**B.     Plaintiff Has Not and Cannot State a Claim for "Religious Coercion – Harassment" And Judgment Should Thus Be Entered Against Plaintiff on the FAC's Fourth Cause of Action**

A violation of Title VII may be predicated on either of two types of harassment: the conditioning of employment benefits upon certain employee conduct ("quid pro quo") and creating a hostile or offensive working environment ("hostile work environment"). *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 57 (1986).[11] Although it is unclear from the FAC, it appears the Fourth Cause of Action for "Religious Coercion – Harassment Title VII" attempts to state a claim for quid pro quo religious

---

[10]     *See E.E.O.C. v. Papin Enters., Inc.*, No. 6:07-cv-01548-JA-KRS, 2009 WL 2256023, at *4 (M.D. Fla. July 28, 2009) ("The EEOC's own publications acknowledge that some inquiry into the sincerity of an employee's belief as well as into the religious nature of the belief is appropriate. Indeed, if the rule were otherwise, an employer would have to grant an accommodation any time an employee requested one, even if there were not a sincerely-held religious belief but instead only a purely personal or stylistic preference"); *Cary v. Carmichael*, 908 F. Supp. 1334, 1346 (E.D. Va. 1995) (summary judgment on religious discrimination claim appropriate because plaintiff did not give defendant sufficient information to comprehend the nature of plaintiff's religious objections).

[11]     *See also Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1054 (9th Cir. 2007) (discussing "two categories" of Title VII sexual harassment cases); *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000) ("In 'quid pro quo' cases, employers condition employment benefits on sexual favors."); *Ellison v. Brady*, 924 F.2d 872, 875 (9th Cir. 1991) (quid pro quo sexual harassment occurs whenever "employers condition employment benefits on sexual favors.").

harassment because the FAC alleges TPMG "conditioned" Plaintiff's "employment on her abandoning her sincerely held religious belief not to be vaccinated against COVID-19." FAC, at p. 15:18-19, ¶ 97. Plaintiff has not and cannot allege facts plausibly establishing any such claim.

At the outset, it is not clear that quid pro quo religious harassment is even a viable legal theory of recovery in the Ninth Circuit. For example, in a previous matter involving Plaintiff's counsel, the Eastern District of California considered whether the defendant's "'conduct . . . constitutes *quid pro quo* harassment' in that it was 'designed to alter Plaintiff's religious observance of the Sabbath, such that he would violate his religious beliefs, and consent to work on Saturdays in the future.'" *Quinones v. Donahoe*, No. 1:13-cv-01553-LJO-GSA, 2014 WL 2524429, at *1 (E.D. Cal. June 4, 2014) (alterations and emphasis in original). There, the court concluded,

> Plaintiff does not cite (and the Court is unaware of) any court within the Ninth Circuit to hold that quid pro quo religious harassment is a viable cause of action. In fact, Plaintiff characterizes his claim as "an issue of first impression in the Ninth Circuit, with no cases applying the theory of quid pro quo harassment in the religion context." Doc. 16 at 1. The Court declines to write or produce new law by finding that a claim for quid pro quo religious harassment exists. Accordingly, USPS's motion to dismiss Plaintiff's third cause of action is GRANTED WITHOUT LEAVE TO AMEND.

*Id.*, at *3. TPMG has been unable to locate any authority within the Ninth Circuit subsequent to *Quinones* in which a claim for quid pro quo religious harassment was recognized.[12]

Even assuming *arguendo* that quid pro quo religious harassment is cognizable in the Ninth Circuit, the FAC utterly fails to allege facts that could even arguably establish such a claim. The only reported appellate decision discussing quid pro quo religious harassment is a decision from the Seventh Circuit in 1997 involving a born-again Christian supervisor chastising an employee about repenting from her allegedly immoral lifestyle so that she would adhere to a certain set of beliefs to keep her job. *See Venters v. City of Delphi*, 123 F.3d 956, 976-77 (7th Cir. 1997). Subsequent decisions from within the Seventh Circuit examining quid pro quo religious harassment claims explain,

---

[12]   Although Plaintiff's counsel has cleverly relabeled the FAC's Fourth Cause of Action as one for "Religious Coercion – Harassment Title VII", review of the actual allegations of that claim compared against those of the "Quid Pro Quo Harassment in Violation of Title VII of the Civil Rights Act of 1964" claim Plaintiff's counsel advanced in *Quinones* demonstrates those claims are substantively identical. *Compare* FAC, ¶¶ 94-102 *with* Strauss Decl., Ex. K at ¶¶ 140-151.

18

1

2

3

4

> Because quid pro quo claims are Title VII claims, and "because Title VII is premised on eliminating *discrimination*," a plaintiff asserting a quid pro quo harassment claim must show that she was harassed on the basis of her protected class. *Holman v. Indiana*, 211 F.3d 399, 403 (7th Cir. 2000) (emphasis in original). ***Absent that discriminatory animus***, there is no discrimination, and the plaintiff has no cause of action under Title VII.

5

6

7

8

9

10

11

12

*Swanson v. Lilly USA, LLC*, No. 1:23-cv-00831-TWP-TAB, 2024 WL 125978, at *9 (S.D. Ind. Jan. 10, 2024) (italics in original; bold and italics added). For this reason, district courts within the Seventh Circuit considering quid pro quo religious harassment claims arising from COVID-19 vaccination requirements have uniformly "rejected the notion that 'quid pro quo' harassment can be pled through '[a]llegations that, absent an accommodation, a neutral [COVID-19 vaccination] mandate forced Plaintiffs to choose between their deeply held beliefs and their continued employment.'" *Id.; see also Van Gorp v. Eli Lily & Co.*, No. 1:22-cv-01650-TWP-MKK, 2023 WL 5486052, at *7 (S.D. Ind. Aug. 24, 2023).

13

14

15

16

17

18

19

20

21

22

In this case, the FAC's simply asserts that by adopting the Policy, TPMG "conditioned Weiss' employment on her abandoning her sincerely held religious belief not to be vaccinated against COVID-19." FAC, ¶ 97. The Court has already determined that the FAC "pleads no facts that reflect [the Policy] was implemented to discriminate against 'Christian Jews.' Nor has Weiss demonstrated her termination from employment was other than the application of a uniform vaccination policy." CM/ECF #23 at p. 6; *Weiss,* 2023 WL 8420974, at *3. Plaintiff was provided with the opportunity to amend the FAC to address its failure to allege discriminatory intent, and chose not to do so. *See* CM/ECF #29 (Setting Plaintiff's January 18, 2024 deadline to file a SAC). Because the FAC has not and cannot plead facts showing the discriminatory animus necessary to establish quid pro quo religious harassment, judgment should be granted as to the FAC's Fourth Cause of Action.

23

24

25

26

27

28

The FAC's Fourth Cause of Action fares no better if it is somehow construed as a hostile work environment religious harassment claim. "Under Title VII, to prevail on a hostile work environment claim based on religion, [a plaintiff] must show that: (1) she was subject to verbal or physical conduct of a harassing nature that was based on her religion; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive as to alter the conditions of her employment and create an abusive work environment." *Samuels v. We've Only Just Begun Wedding Chapel, Inc.*, 154 F. Supp. 3d 1087,

19

1096 (D. Nev. 2015) (citing *Kang v. U. Lim America, Inc.*, 296 F.3d 810, 817 (9th Cir. 2002)). The FAC advances absolutely no allegations establishing that Plaintiff was subject to verbal or physical conduct of a harassing nature or that any such conduct was sufficiently severe or pervasive to alter the conditions of her employment. *See generally,* FAC. There is thus no basis upon which to find the Fourth Cause of Action establishes a hostile work environment religious harassment claim. *See Maggio v. Oregon Health & Sci. Univ.*, No. 3:23-cv-00116-JR, 2024 WL 665991, at *5 (D. Or. Jan. 8, 2024), report and recommendation adopted, No. 3:23-CV-116-JR, 2024 WL 665089 (D. Or. Feb. 16, 2024) ("Assuming hostile work environment claims based on religion are cognizable under Title VII, plaintiff's purported claim does not appear to fit within that framework, as the FAC neglects to address salient elements.")

As the Court previously recognized, the Policy was "facially neutral in that all employees were mandated to take the COVID-19 vaccine by a certain date, regardless of their religious identity, unless an exemption request was granted" and the FAC fails to demonstrate that Plaintiff's "termination from employment was other than the application of a uniform vaccination policy." CM/ECF #26 at p. 6; *Weiss*, 2023 WL 8420974, at *3. Given these conclusions, the FAC presents absolutely no factual basis upon which to pursue a Title VII harassment claim, under any theory. Judgement on the pleadings should accordingly be entered as to the FAC's Fourth Cause of Action.

### C.    Because the FAC's Eighth Cause of Action is Derivative of the FAC's Other Claims, it Must Fail as Well

The FAC's Eighth Cause of Action asserts a claim for failure to prevent discrimination and harassment under FEHA.  *See* FAC, ¶¶ 137-143. This claim is, however, entirely dependent on the viability of the FAC's other claims. *See Hittle v. City of Stockton*, No. 2:12-cv-00766-TLN-KJN, 2016 WL 1267703, at *6 (E.D. Cal. Mar. 31, 2016) (claim for failure to prevent religious discrimination and harassment may not be maintained if plaintiff fails to establish cause of action for religious discrimination); *Trujillo v. North County Transit Dist.*, 63 Cal. App. 4th 280, 284 (1998) ("There's no logic that says an employee who has not been discriminated against can sue an employer for not preventing discrimination that didn't happen, for not having a policy to prevent discrimination when no discrimination occurred."). Because judgment must be entered against Plaintiff on the FAC's Second, Fourth, and Sixth Causes of Action, the Eighth Cause of Action for failure to prevent discrimination and

20

harassment must fail as well. *See Smith v. W.W. Grainger, Inc.*, No. 5:18-cv-01405-JGB-SP, 2019 WL 1670942, at *8 (C.D. Cal. Feb. 5, 2019) ("there can be no claim for failure to prevent discrimination unless an underlying discrimination claim survives"); *Taylor v. Adams & Assocs., Inc.*, No. 2:16-cv-00311-TLN-KJN, 2017 WL 4340276, at *6 (E.D. Cal. Sept. 29, 2017) ("Plaintiff has not alleged facts sufficient to state a claim for discrimination based on age, race, or medical condition, so Plaintiff's derivative claim for failure to prevent discrimination fails.").

### D.    Leave to Amend Should Be Denied as Futile

Although the Ninth Circuit has a liberal policy favoring amendment, the Court is not obligated to grant leave to amend if "the pleading could not possibly be cured by the allegation of other facts" or "further amendment would be futile." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000); *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987); *see also Hinton v. Pacific Enters.*, 5 F.3d 391, 395 (9th Cir. 1993) ("If the amendments to the complaint will fail to cure fatally defective allegations, refusal to allow leave to file the amended complaint is acceptable.") For this reason, if a plaintiff fails to advance facts in a complaint or an opposition to a motion to dismiss that would establish viable claims, denying leave to amend for futility is justified. *See Goosby v. City of Los Angeles*, No. 2:21-cv-08234-SVW-DFM, 2021 WL 6496413, at *2 (C.D. Cal. Dec. 7, 2021); *Sayegh v. John Enright, Inc.*, No. 2:10-cv-04794-JFW-JCG, 2010 WL 11531206, at *3, fn. 3 (C.D. Cal. Dec. 8, 2010).

As to the FAC's Second and Sixth Causes of Action, the facts underlying Plaintiff's exemption request cannot change. Plaintiff actively refused to meaningfully participate in TPMG's attempt to gather additional information regarding her exemption request and thus, as a matter of law, Plaintiff cannot establish she adequately informed TPMG of her religious beliefs or nature of the conflict between those alleged religious beliefs and the Policy. Because no amendment of the FAC can change these facts, the FAC's Second and Sixth Causes of Action should be dismissed with prejudice and without leave to amend.

As to the FAC's Fourth Cause of Action, it is doubtful Plaintiff's theory of recovery is cognizable in the Ninth Circuit. Even if Plaintiff's quid pro quo religious harassment/coercion theory does advance a potential claim, however, the Court already provided Plaintiff with an opportunity to allege the discriminatory intent necessary to state such a claim and Plaintiff actively declined to do so.

21

Because there is no viable rationale upon which to give Plaintiff yet another bite at the apple, the FAC's Fourth Cause of Action should be dismissed with prejudice as well.

Finally, the FAC's Eighth Cause of Action is entirely derivative of and dependent on a finding of liability as to one of the FAC's other claims. Because there are no facts that can cure the deficiencies of the FAC's Second, Fourth, or Sixth Causes of Action, the only non-derivative claims remaining in the FAC after the Court's Order granting TPMG's Motion to Dismiss (*see* CM/ECF #23 at p. 7; *Weiss*, 2023 WL 8420974, at *4), the derivative Eighth Cause of Action should be dismissed with prejudice as well.

## V.    CONCLUSION

For all of the foregoing reasons, TPMG respectfully requests that the Court grants its motion for judgment on the pleadings on the remaining claims advanced in the FAC, the FAC be dismissed in its entirety with prejudice and without leave to amend, and judgment be entered in TPMG's favor.

DATED: April 17, 2024                        Respectfully submitted,

                                             SEYFARTH SHAW LLP


                                             By:   *Sean T. Strauss*
                                                   Christian J. Rowley
                                                   Sean T. Strauss
                                                   Galen P. Sallomi

                                             Attorneys for Defendant
                                             THE PERMANENTE MEDICAL GROUP, INC.

22